IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

THE UNITED STATES OF AMERICA )
FOR THE USE AND BENEFIT OF )
CAPITOL BUILDING SUPPLY, INC., )
)
Plaintiff, )
)
v. ) Civil Action No. 1:10CV06
)
CLARK REALTY, LLC, et al., )
)
Defendants. )

## MEMORANDUM OPINION

This matter comes before the Court on parties' cross-Motions for Summary Judgment.

In December 2003, Clark Realty Builders, LLC ("Defendant Clark") entered in a Construction Agreement with Fort Belvoir Residential Communities, LLC ("FBRC" or the "Owner"), a Delaware limited liability company. In that Construction Agreement, Defendant Clark agreed to construct housing for military personnel and their families at Fort Belvoir, Fairfax County, Virginia, on land subleased by FBRC. This project was called the "Fort Belvoir Family Housing Community" project (the "Project").

The Project is part of an effort by the United States Army to privatize military housing, in order to upgrade the stock of housing available for military families pursuant to the Military

Housing Privatization Initiative, 10 U.S.C. §§ 2871 et seq.

Pursuant to the Construction Agreement, Clark has been constructing and renovating new and historic housing for families in multiple villages at Fort Belvoir.

Clark agreed to furnish performance and payment bonds for the Project, to be issued using American Institute of Architects ("AIA") forms which are widely used for private construction projects. Arch Insurance Company ("Arch" or the "Surety") issued Payment Bond No. SU1004047 (the "Payment Bond") for the Project. The Payment Bond is based on AIA form A312.

On July 29, 2004, Smitty's Building Supply, Inc. ("Smitty's") signed a Purchase Order, pursuant to which Smitty's agreed to provide building materials to Clark for using in the first phase of the Project. Over the course of the next four years, the Purchase Order was amended through Change Orders, so that Smitty's continued to provide building materials for additional phases after the initial phase of the Project. Throughout the course of the Project, Smitty's role was to provide building materials. Smitty's provided no services with respect to the Project.

Clark paid Smitty's for all materials that Smitty's supplied, whether directly or indirectly through other suppliers, to or for the Project. Smitty's recognized and acknowledged such payment by signing and submitting to Clark, with each payment request and for each pahse of the Project on which Smitty's provided building

materials, a signed Affidavit and Waiver and Release of Liens (an "Affidavit"). In each such Affidavit, Smitty's certified that Smitty's had received payment in full for all materials furnished. Smitty's also warranted in each of those Affidavits that Smitty's had paid in full all suppliers from which it had acquired any materials that may have been incorporated into the Project.

Smitty's sent invoices to Clark for each and every shipment of materials delivered to the Project. The invoices were sent by Smitty's after the materials at issue were delivered to the Project. Clark did not pay for any materials that were back-ordered or otherwise not delivered. Smitty's declared bankruptcy on January 5, 2009, and is no longer a supplier on the Project.

All of the materials at issue in this litigation were furnished in connection with the "Jadwin Village" phase of the Project which involved the construction and rehabilitation of a number of homes at the Jadwin Village are of the area of the property in 2008. For the Jadwin Village phase of the Project, Clark ordered building supplies from Smitty's. Smitty's, in turn, ordered some of those materials from Capitol, with Capitol delivering those materials directly to Clark.

In total, Capitol delivered materials to the Project pursuant to six separate orders as memorialized in Smitty's invoices, Capitol invoices and Capitol delivery tickets. All materials were delivered by Capitol no later than September 16, 2008.

Clark paid Smitty's in full for all of the materials delivered by Capitol. By affidavit, Smitty's affirmed that it had received payment in full for all work performed through September 25, 2008. Smitty's also confirmed that it had paid in full all of its suppliers, and that such suppliers had no right to claim against Clark, the Surety or the Owner.

In addition to partial Affidavits, Smitty's provided a final Affidavit in March 2009, covering all of the materials provided by Smitty's (directly or indirectly) in connection with the Jadwin Village phase of the Project. In those Affidavits, Smitty's acknowledged that it had been fully paid, and represented that it had paid all of its suppliers. Clark received a bond claim from Capitol on January 5, 2009.

Before a sub-subcontractor can bring a Miller Act claim, that subcontractor must first give timely notice to the contractor. This requires written notice to the contractor within ninety (90) days from the last delivery. 40 U.S.C. § 3133(b)(2). Capitol thus cannot recover under the Miller Act unless it first shows that it provided written notice to Clark of its purported Miller Act claim within ninety days from the date that Capitol last supplied the materials that are subject of that claim.

Here, Capitol did not give timely notice. All materials at issue were delivered to Clark by September 16, 2008. Capitol's written notice was not received by Clark until January 5, 2009.

Thus, Capitol failed to provide written notice of its Miller Act claim until 110 days after Capitol's last delivery of the materials at issue.

Capitol's failure to give timely written notice is fatal to Capitol's Miller Act claim. While some other aspects of the Miller Act may be "liberally construed," timely notice is a strict condition precedent to a claimant's right to recovery. See <u>Pepper Burns Insulation, Inc. v. Artco Corp.</u>, 970 F.2d 1340, 1343 (4th Cir. 1992) (Miller Act notice requirement is exempted from liberal construction).

The requirements of the Payment Bond with respect to initial notice are essentially the same as those of the Miller Act. The Payment Bond requires written notice to the contractor within ninety (90) days of furnishing materials. In addition to this initial notice requirement, and unlike the Miller Act, the Payment Bond also provides that any claimant must also send a written notice to the Surety once the Contractor has either denied or failed to respond to the claim.

Capitol last supplied materials to the Project on September 16, 2008 or earlier, and did not provide written notice of any bond claim, whether Miller Act or otherwise, until January 5, 2009. Just as this was untimely with respect to the Miller Act claim, that notice is equally untimely with respect to any direct claim on the Payment Bond.

Aside from the deficiencies in Capitol's notice, Clark (either directly or indirectly through Clark's obligation to indemnify the Surety) should not be required to pay twice for the materials supplied by Capitol. Neither the Payment Bond nor equity permits such a result.

The Payment Bond states: "this obligation shall be null and void if the Contractor . . . [p]romptly makes payment, directly or indirectly, for all sums due Claimants. . . ." No genuine dispute exists that Clark paid Smitty's for all materials provided, directly or indirectly, including any supplied by Capitol. Smitty's also represented to Clark that it had paid Capitol, providing multiple Affidavits to the effect. Capitol now contends that it was not paid, until well after Clark had paid Smitty's and after Smitty's had filed for bankruptcy. Because Clark paid Smitty's for all materials supplied, Smitty's could not have obtained a mechanic's lien, as Smitty's itself verified through its Affidavits. Accordingly, Capitol likewise would have no right to a mechanic's lien and correspondingly no right to claim under the Payment Bond for the materials at issue.

For these reasons, summary judgment should be GRANTED to the Defendants. An appropriate Order shall issue.

/s/
Claude M. Hilton
United States District Judge

Alexandria, Virginia
September _15_, 2010